# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:06CV76-MU-02

| | |
|---|---|
| **JERRY THOMAS SURRATT,** ) | |
| Petitioner, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| **M.L. PAYSOUR, Supt.,** ) | |
| Respondent. ) | |
| _____) | |

**THIS MATTER** comes before the Court on Petitioner's Petition for a Writ of <u>Habeas Corpus</u> under 28 U.S.C. §2254, filed February 22, 2006 (document # 1); and on Respondent's Motion for Summary Judgment, filed April 24, 2006 (document # 3). For the reasons stated herein, and for the further reasons stated in Respondent's Supporting Brief, Respondent's Motion for Summary Judgment will be <u>granted</u>; and Petitioner's Petition will be <u>denied</u> and <u>dismissed</u>.

## I. FACTUAL AND PROCEDURAL BACKGROUND

According to the record, on April 5, 2004, a Gaston County grand jury indicted Petitioner on four counts of selling cocaine, four counts of delivering cocaine, six counts of possessing with intent to sell and deliver cocaine, one count of possessing marijuana, and one count of possessing drug paraphernalia in the cases numbered as 03-CRS-64115 through 64129, 64173 and 65796. On August 6, 2004, Petitioner appeared before the Superior Court

of Gaston County and pled guilty to those offenses under a plea agreement which provided that in exchange for his pleas of guilty to the foregoing charges, "the State agree[d] to consolidate the [four counts of selling cocaine] Class G felonies into one active sentence of 21 to 26 months; and further agree[d] to consolidate the remaining matters into two (2) suspended, consecutive Class H sentences, the terms of which may [be] set by the court."  (Resp. Supp. Brief, Ex. 1).

In addition, Petitioner stipulated to having 15 prior record points, yielding a Prior Record Level of V.  Thus, the worksheet accompanying Petitioner's guilty plea form reported that had he been convicted of the subject charges without the benefit of a plea agreement, his maximum sentencing exposure would have been 476 months plus 150 days imprisonment.  (Resp. Supp. Brief, Ex. 1).  Nevertheless, following the entry of his guilty pleas, the trial court sentenced Petitioner, in accordance with his plea agreement, to the vastly reduced term of 21 to 26 months imprisonment for the four cocaine sale convictions along with two consecutive, suspended terms of 15 to 18 months each for the remaining convictions.

Petitioner did not directly appeal either his convictions or sentences to the North Carolina Court of Appeals.  Rather, at some later point in August 2004, Petitioner commenced his pursuit of collateral review by submitting a letter to the sentencing

2

Judge, asserting that "one or some of the charges were illegal . . ." because they were supported by evidence which was obtained in violation of his Fourth Amendment rights, and his attorney had failed to raise this Fourth Amendment issue with the trial court. The Judge construed Petitioner's letter as a Motion for Appropriate Relief ("MAR" hereafter) and denied it based upon the conclusion that the MAR "set forth no probable grounds for the relief requested, either in fact or law." (Resp. Supp. Brief, Ex. 5).

Next, Petitioner filed a Petition for a Writ of <u>Certiorari</u> with the State Court of Appeals purporting to be seeking review of the denial of his <u>de facto</u> MAR. However, in addition to the MAR's claims of a Fourth Amendment violation and the related ineffective assistance of counsel claim, Petitioner asserted that the trial court lacked subject matter jurisdiction over his case because of the alleged Fourth Amendment violations; that he was subjected to a due process violation because he never was arraigned on the charges and he never waived his right to arraignment; that his guilty pleas to the charges of selling cocaine[1] were involuntary because they were induced by coercion and false threats of a lengthier sentence than that to which he was exposed; and that counsel was ineffective for having engaged in a pretrial discussion concerning a "defense strategy" and a "'conflict

---

[1] In the caption of his Certiorari Petition and all subsequent pleadings, Petitioner only referenced the case number which corresponds to his four convictions for selling cocaine. Therefore, the Court will construe the instant federal Petition as pertaining only to those convictions.

3

of interest' issue" with the trial judge, and he otherwise breached his duties of "trust, loyalty [and] confidentiality" to Petitioner.

In response, the State argued that Petitioner's <u>Certiorari</u> Petition was subject to summary dismissal for its failure to comply with the State rule governing the content of such petitions. <u>See</u> N.C.R.App.P. 21(c). Accordingly, the State Court of Appeals summarily dismissed the Petition, without prejudice, for Petitioner's failure to comply with Rule 21.

Petitioner subsequently filed an amended <u>Certiorari</u> Petition raising the same claims as were raised in his original Petition but also attaching the supporting documents as required under Rule 21. In response, the State argued that most of Petitioner's claims either were contradicted or simply unsupported by the record and/or documentary evidence; and that the remaining claims were waived by his voluntary guilty plea. Therefore, the State asked the Appellate Court to summarily dismiss the Petition. Upon its review, the Appeals Court denied the Petition.

Petitioner next filed his <u>Certiorari</u> Petition in the Supreme Court of North Carolina arguing the identical claims as were raised in the State Appellate Court. The State opposed that Petition arguing that, for the reasons which it previously stated in the Court of Appeals, the Petition lacked merit. Not surprisingly, the State Supreme Court dismissed the subject Petition.

4

Petitioner then returned to the Superior Court of Gaston County and filed a Petition for Habeas Corpus review wherein he reiterated the claims raised in his preceding three Petitions. However, that Petition was construed as a second MAR and denied. More particularly, the Superior Court determined that the claims which Petitioner presented in his first MAR still raised no probable grounds for relief either in fact or law, and that the new claims procedurally were barred under N.C.G.S. 15A-1419, due to Petitioner's failure to have raised them in his first MAR. Petitioner did not seek certiorari review for his second MAR.

Rather, Petitioner filed the instant federal Habeas Petition in this Court re-alleging his claims that: he was denied due process of law by virtue of the trial court's failure to arraign him or to secure a waiver of arraignment; his guilty pleas were involuntarily made due to coercion and false threats of a lengthy sentence; his convictions were based upon illegal searches and seizures in violation of the Fourth Amendment; and counsel was ineffective due to counsel's "failure to protect [his] rights, by making the proper motions, where [counsel] did not protect or inform of said[] indictment, illegal search and seizure and due process. Also counsel divulge[d] private confidential conversation, that was held on office visits, which is a conflict of interest."

On April 24, 2006, Respondent filed a combined Response and

5

Motion for Summary Judgment. That Response asserts that Petitioner is not entitled to any relief because claims one, two and the portions of the fourth claim alleging failures to protect with the filing of proper motions, to protect or inform him of the indictment, and that counsel engaged in a conflict of interest are unexhausted and barred for procedural default; that his Fourth Amendment claim is not cognizable in this proceeding; and that his claim that counsel was ineffective for having failed to raise such Fourth Amendment claim is baseless.

Last, on May 16, 2006, Petitioner filed a response (document # 7), merely asserting, without actually establishing, that his claims are exhausted and not defaulted. Otherwise, Petitioner's response simply reiterates his claims.

For its part, the Court carefully has reviewed the parties' submissions and determined that Petitioner is not entitled to any relief.

## II. ANALYSIS

### 1. Standard of review for habeas petitions.

Generally speaking, the standard of review to be applied by the Court to habeas cases is "quite deferential to the rulings of the state court." Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001). Indeed, as the Burch Court noted:

> [p]ursuant to the standards promulgated in 28 U.S.C. §2254, a federal court may not grant a writ of habeas corpus with respect to a claim adjudicated on the merits in state court

6

> proceedings unless the state court's adjudi-
> cation: (1) "resulted in a decision that was
> contrary to, or involved an unreasonable
> application of, clearly established Federal
> law, as determined by the Supreme Court of
> the United States" . . . ; or (2) "resulted
> in a decision that was based on an unreason-
> able determination of the facts in light of
> the evidence presented in the State court
> proceeding. . . ."

Id. (internal citations omitted).

The Supreme Court has explained that a state court adjudication is "contrary" to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000), quoted in Burch.

An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Therefore, this Court may **not** issue the writ even if it concludes in its own independent review, that the relevant state court merely made an incorrect or erroneous application of the correct federal principles. Id.

The applicable standard of review is to be applied to "all claims 'adjudicated on the merits,' that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.23d 445, 455 (4th Cir. 1999).

Equally critically, the law is clear that in order to obtain review on the merits, a petition under § 2254 must meet several requirements, beginning with all claims in the petition having been fully be exhausted. In other words, [b]ecause the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . , state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process" before coming to federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In general, full exhaustion is achieved when a petitioner raises both the substance of a claim and its supporting authority to all appropriate courts, commencing with the first court which has authority to consider such claim. George v. Angelone, 100 F.3d 353, 362 (4th Cir. 1996) (relating to exhausting "the substance" of the claim for review in state court proceedings); Gray v. Netherland, 518 U.S. 152, 162-63 (1996) (noting that exhaustion also requires that the claim(s) cite the applicable federal rule(s) and describe the relevant facts).

Under North Carolina law, the non-capital, post-conviction review process, by which claims must be exhausted, begins with the filing of an MAR in the appropriate superior court and, upon

8

its denial, the process concludes with the presentation of the same claim(s) to the State Court of Appeals in a petition for certiorari review.  See N.C.G.S. §§ 15A-1415 through 1422 (2007); and N.C. R. App. P 21(e).  Thus, if a claim has not been presented to the North Carolina Court of Appeals by a petition for certiorari review, it has not been fairly presented.  O'Sullivan, 526 U.S. at 839-40; Matthews v. Evatt, 105 F.3d 907, 911 (4th Cir. 1997).  Nevertheless, the federal court has the authority to adjudicate and deny a petitioner's unexhausted claims, notwithstanding a respondents' refusal to waive exhaustion.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus [under § 2254] may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").

   2.   **Petitioner's first two claims and portions of his fourth claim are both unexhausted and subject to dismissal under § 2254(d)(1) and (2).**

With the foregoing provisions in mind, this Court finds that the majority of Petitioner's claims are unexhausted and subject to dismissal as procedurally defaulted.  To be sure, a review of the record reflects that following his convictions, Petitioner bypassed a direct appeal and filed an MAR in the State Superior Court raising two of his current federal claims, i.e., that he suffered unconstitutional searches and seizures (claim three); and that his attorney was ineffective for having failed to raise

9

such Fourth Amendment claim (claim four, subsection c). However, Petitioner's first MAR did _not_ raise his other federal claims -- that his due process rights were violated by the absence of an arraignment or a waiver thereof (claim one), that his guilty plea was involuntarily entered (claim two), or that counsel was ineffective for having failed to file various motions, to protect him from the indictment and for having divulged confidential information about his case to the trial judge (claim four, subsections a b and d). Rather, Petitioner first introduced these claims to the trial court in his _second_ MAR. Making matters worse, Petitioner did not even bother to seek _certiorari_ review for such second MAR.

To put it simply then, the subject claims never underwent a full round of review in the State court, that is, they never were raised in an MAR for which Petitioner also sought _certiorari_ review. Therefore, the subject claims are not exhausted. More critically, the record reflects that on the occasion when Petitioner raised the instant claims in his second MAR, the trial court found that the claims procedurally were barred by Petitioner's unexcused failure to have raised them in his first MAR.

The Fourth Circuit Court of Appeals has determined that North Carolina's procedural default rule is an adequate and independent state ground precluding federal _habeas_ review. See _Williams v. French_, 146 F.3d 203, 209 (4th Cir. 1998), _cert._

denied, 525 U.S. 1155 (1999). Thus, in light of Petitioner's procedural default of this matter in State court and the State's assertion of such default as a bar, he cannot now obtain federal review of the claims unless he is able to satisfy one of two narrowly drawn exceptions which would allow the Court to excuse his default. See Fisher v. Angelone, 163 F.3d 835, 844 (4th Cir. 1998).

To put it another way, this Court may review a petitioner's procedurally defaulted claim only if he can establish "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or if he can establish actual innocence for the underlying offenses. Coleman v. Thompson, 501 U.S. 722, 750 (1991). This practice of federal courts rejecting procedurally defaulted claims ensures that habeas petitioners do not evade state procedural rules governing the review of criminal convictions. See Lambrix v. Singletary, 520 U.S. 518, 523 (1997).

To demonstrate "cause," a petitioner may show that the factual or legal basis for a claim "was not reasonably available" at the time the first challenge was made. McCarver v. Lee, 221 F.3d 583, 591 (4th Cir. 2000). To establish corresponding prejudice, a petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial

11

with error of constitutional dimensions." Id. at 592.

In light of the MAR Court's treatment of this claim, Petitioner obviously was aware that procedural default would be an issue for him in this Court. Nevertheless, Petitioner has not even attempted to establish "cause and prejudice" for his procedural default; nor has he even hinted that he actually and factually is innocent of the subject charges. See, e.g., Mackall v. Angelone, 131 F.,3d 442, 446 n.7 (4th Cir. 1997). Therefore, Petitioner is not entitled to a merits review of these claims.

### 3. **Petitioner's remaining claims also fail**.

#### A. **Fourth Amendment claim**.

Petitioner claims that his convictions are based upon evidence which was obtained in violation of his Fourth Amendment rights. However, the law is well settled that federal courts simply will not grant habeas relief based upon a Fourth Amendment violation for which "the State has provided an opportunity for full and fair litigation." Stone v. Powell, 428 U.S. 465, 482 (1976). See also Burket v. Angelone, 208 F.3d 172, 186 (4th Cir. 2000) (federal courts "do not sit to review the admissibility of evidence under state law unless erroneous evidentiary rulings were so extreme as to result in a denial of a constitutionally fair proceeding.").

Notwithstanding the fact that Petitioner pled guilty and thereby waived his right to challenge this claim in a trial, he

still was able to raise this argument in his MAR and in a corresponding certiorari petition. On those occasions, the State courts considered but rejected the merits of the claim. As such, Petitioner has been afforded an opportunity for the full and fair litigation of this claim; therefore, Petitioner also is not entitled to any review on this claimed Fourth Amendment violation.

### B. **Ineffective assistance of counsel claim**.

By his final claim, Petitioner alleges that counsel was ineffective for having failed to raise the foregoing Fourth Amendment violation.

When the State courts review claims of ineffectiveness, they must determine whether the petitioner has shown that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 668, 687-91 (1984). In considering such claims, the law provides a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields, 956 F.2d at 1297-99; Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977). Thus, a petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. Critically, if a petitioner fails to meet this burden, a "reviewing court need not consider the performance

prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697.

Moreover, in considering the prejudice prong of the analysis, the reviewing court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998). Rather, the court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

More critically, when a petitioner alleges ineffective assistance of counsel following the entry of his guilty plea, he has a more specific burden to meet. See Hill v. Lockhart, 474 U.S. at 53-59; Fields, 956 F.2d at 1294-99; and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir. 1988). The Fourth Circuit described the petitioner's burden in a post-guilty plea claim of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified. Such a defendant must show that there is a reasonable probability that, but for counsel's errors, <u>he would not have pleaded guilty and would have insisted on going to trial</u>."

Hooper, 845 F.2d at 475 (emphasis added); accord Hill v. Lockhart, 474 U.S. at 59-60; and Fields, 956 F.2d at 1297.

Thus, "the central inquiry" here was whether, but for coun-

14

sel's alleged errors, this Petitioner would have insisted on a trial. Slavek v. Kinkle, 359 F.Supp.2d 473, 491 (E.D. Va. 2005) (summarily rejecting claims of ineffectiveness on prejudice prong based on petitioner's failure and inability to argue that but for alleged errors, he would have insisted on going to trial).

This Court has reviewed the pleadings which Petitioner filed in State court and found that he failed to assert or even suggest that but for counsel's alleged failure to raise this purported Fourth Amendment violation, he would have insisted upon going to trial. Moreover, the record contains the trial court's findings that Petitioner swore during his plea colloquy that he was satisfied with the services of his attorney and was guilty of the charges. As such, the State court properly denied this claim of ineffectiveness as Petitioner did not establish any prejudice let alone a deficient performance. In sum, the undersigned finds that Petitioner has failed to show that the State court's proceedings resulted in a decision on this claim that was contrary to, or involved an unreasonable application of, clearly established Federal law; therefore, this claim must be denied.

### III. CONCLUSION

The record shows that Petitioner procedurally defaulted, without excuse, all but two of his claims, and he failed to demonstrate an entitlement to relief on the remaining ones. Consequently, Respondent's Motion for Summary Judgment must be

15

<u>granted</u> and Petitioner's Petition must be <u>denied</u> and <u>dismissed</u>.

## IV. <u>ORDER</u>

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Respondent's Motion for Summary Judgment (document # 3) is **GRANTED;**

2. Petitioner's Petition for a Writ of Habeas Corpus (document # 1) is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: February 3, 2009

Graham C. Mullen
United States District Judge